So that brings us to the last case on our docket for today. And that's the case of Mauricio Flores v. Skywest, Inc. Good morning, Your Honors. Christopher Desmond on behalf of the Plaintiff Appellant Mauricio Flores. And Your Honors, if I could, I'd like to reserve three minutes for rebuttal. So I'd like to start today, Your Honor, discussing what I think is the primary issue in this case, whether, under Arizona law, the pilot in question in this case, Brendan Flygare, owed a duty of care to my client, Mauricio Flores. So under Arizona law, the seminal case, which is a fairly recent case, is the Gibson case. And under the Gibson case, it explains that for there to be a duty of care under Arizona law, you have to either identify a special relationship between the parties or a public policy that favors the imposition of a duty. And so I'd like to address those in turn unless the court has questions or would like me to focus on one or the other at the beginning. So Your Honors, beginning with the special relationship path toward duty. So the special relationship path, I think we identify two cases inside of our brief that I think are relevant to this. The first being the Stanley case and the second being Ramsey case. Now, in the Stanley case, the Stanley case, first of all, was cited by the Gibson case. When Gibson sort of transformed the rule of duty in Arizona in 2007, they noted that duties can exist based on special relationships. And in the process of saying that, they cited to the Stanley case. Now, sort of as a preliminary note before going into the facts of the Stanley case and why I believe it's applicable here, I do want to note that in general, the tenor of the briefing in this case and the tenor of the lower court's opinion is that Gibson somehow made it so that duties were very difficult to impose in Arizona and under Arizona negligence law. Now, notably, Gibson, while it did sort of reframe what duty is under Arizona law, it did impose a duty on the defendant inside of that case. But more notably, there's a passage from Gibson that I think that the court should have in mind while we're engaging in this discussion today. And that's located at page 146 of the Gibson opinion. And in that passage, the court quoting them states that when a court or a legislature adopts a no-duty rule, it generally does so based on concerns that potential liability would chill either socially desirable conduct or otherwise have adverse effects. Now, I don't think that this is the sort of instance where any court or legislature would believe that the duty that we're trying to impose in this case would have any sort of adverse social effects or would chill some sort of desirable conduct. This is, of course, a very fact-specific occurrence that happened today, likely not something that's going to... Let me stop you right there, because Gibson emphasizes this is a question. Duty is a legal question to be resolved by the court before you get into fact-specific circumstances. And what troubles me here is I really have difficulty understanding whether it's special relationship or whether it's a policy, but what it is that should make an employee of a ramp agent with the company that's responsible for taking care of the aircraft on the ground somehow owed a duty by somebody outside. I mean, why wasn't it Mr. Flores's job to take care of the aircraft in exactly the way that he was asked to do? Well, your honor, I think that invokes to a degree the opinion in the Stanley case. And Stanley, what the court noted, was that when one individual in a given scenario has a certain level of specialized knowledge, skill, or training, that there's an expectation that they will utilize... I don't see Gibson endorsing that approach at all. Gibson does not say to me who has more knowledge. Gibson says you decide before you get into specific facts what the duty is. And Ramsey talks about, in fact, you quote from Ramsey in your brief about the pilot of an aircraft owes a legal duty of care to many people, persons and other aircraft, bystanders on the ground, and passengers. Your client appears to fall in none of those categories. Well, your honor, I think you could certainly say that my client falls into the category of a bystander on the ground. How could it be a bystander? He's employed by Piedmont, which has been hired by Southwest to service the aircraft. He's not a bystander. He's the ramp agent. He's the person I would expect to be responsible for doing what he did. That doesn't make him a bystander. Your honor, to be clear, the reading of the record that I have is that nobody would be expected to do what Mr. Flores was asked to do. All the testimony in this case is that everybody, including Mr. Flyger, understood that when there was a pressurized cabin, that nobody should be opening the door to that plane. That's a dangerous thing to do. Well, the plane's not going to sit there forever. Something is to be done. And apparently the hose or nozzle, whatever, was attached by another Piedmont employee. So maybe the first step that should have been taken by the Piedmont employees, including Mr. Flores, is to detach that nozzle. I'm still mystified as to how he could be characterized as a bystander. I don't believe the Ramsey case, to be fair, doesn't particularly describe who is a bystander. That wasn't the focus of the opinion. The opinion was more focused on the pilot and his interaction with the engine that was within the plane and the damage that he did to the engine. They then made the general statement regarding bystanders, but they didn't know who was or who was not a bystander. That doesn't tell me that your client is somebody who's supposed to be within the circle to whom a duty is owed. His job was to be there, to work on the aircraft. And why somebody else owes him a duty when it's his company's responsibility to deal with the aircraft, I haven't figured out yet. The case, Your Honor, is that the pilot was ultimately in control of that vehicle. SkyWest was the owner of that plane, not American Airlines or Piedmont. Piedmont and American Airlines were contracted to service the plane, but ultimately it was the pilot that was under control. And what would they ask for? Servicing of the plane? You've just told me what I knew, which is that Piedmont is the one responsible for servicing your clients employed by Piedmont. Why somebody from SkyWest is supposed to intervene and owe a duty of care to the person they've hired to service the airplane. I haven't figured out the source of that duty yet. Your Honor, I would maybe be a little bit more in agreement with you if we were making an argument that pilot Flygear simply had a duty to intervene and stop my client. Say, for example, my client was simply walking up to the plane, grabbing for the door and had had no interactions with the pilot prior to that. That argument would seem to be more on point with the idea that there's no duty to intervene. But this isn't a duty to intervene argument. This is a duty to avoid creating harm when he specifically instructed Mr. Flores, despite knowing the danger of that issue, to open the door to the plane when Mr. Flores was unaware of those dangers associated with that. Let me take a slightly different approach to the Ramsey and to Stanley here. And ask you, isn't Ramsey actually distinct here because the pilot's negligent conduct in that case seems stemmed from him actually flying the plane. Isn't that correct? It did. In that particular case, it did stem from flying the plane. The court didn't limit itself to instances where someone was flying when it made the statement that while operating the aircraft, Cutter's pilot owed legal, not contractual duties of due care to all persons within the foreseeable zone of danger. Here, in this situation, it seems like we're considering whether someone should be liable  for allegedly instructing someone to open, not just someone, but a ramp agent here, to open the main cabin door before even boarding the plane. Is that correct? That's correct. All right. And you think that Ramsey supports your position? I do, because I believe that that amounts to operating the aircraft. Okay. And then on Stanley, and I guess I just want to maybe add on to what Judge Clifton is asking you, because it seems like that case also seemed to emphasize the special skill and training of those involved. And here, I'm just wondering if there's not an argument that could be made that Mr. Flores was the one with the special skill and training to deal with pressurized doors, because I believe the record says that he was trained on this precise issue when he was first hired by Piedmont in 2013. So it seems sort of odd to me that we would hold, or someone would hold the pilot liable for this occurrence, I mean, the entry here when the ramp agent is the one that had the specialized skill in opening the door. Well, Your Honor, I think while there's potentially an argument that both of the individuals involved in this had a certain degree of specialized skill, training, or knowledge, I don't think that there's an argument that only Mr. Flores did. But more relevant is, I believe, the fact that when it comes to the fact that this particular cabin was pressurized at the moment that Mr. Flores was asked to open it, it was Brendan Flygare who was aware of those facts. He was the one who had that particularized knowledge regarding that particular airplane. But Your Honor, very quickly to turn, because to the degree that the court does not believe that Ramsey is applicable, because Ramsey, in the court's view, may be limited to while someone is flying the airplane. That could be what the court intended to indicate when they use the word operating. That's not the way that I read it. But there's a far broader public policy argument that's implicated by Arizona revised statute 28-8273, which we cite to in our brief. Under that statute, it references not just operation, but it also references aircraft that are under a pilot's control. Here, I think we have very clear evidence that this aircraft was under Brendan Flygare's control at the time that he asked Mr. Flores to open the door. Otherwise, Mr. Flores wouldn't have felt the need to comply with that request, and Mr. Flygare wouldn't have felt like he had the authority to make that request. All the evidence here is that Mr. Flygare was the sole pilot who was standing near the airplane at the time. The other pilot arrived at the scene after my client was injured. And so Mr. Flygare, as the pilot who was in control of the vehicle, asked my client to do something that resulted in damage to a person, which is directly addressed by that Arizona revised statute. There's no authority that construed that statute to say that it wouldn't apply here. The Ramsey opinion does briefly mention it and say that it doesn't apply to the facts within Ramsey. But again, as the court noted, the facts in Ramsey were particularly different because there was not a traditional type of injury involved in Ramsey as there is here. There was damage that was done to the actual aircraft that was being flown to the engine of the aircraft. Did you want to reserve the balance of your time? I would, Your Honor. Thank you very much. May it please the court. I am Charles Workin. I represent the defendant, Appali SkyWest, Inc. As my opponent has acknowledged, duty is based in Arizona on either a special relationship or a public policy. There simply is no special relationship between a pilot and a ramp worker. And a public policy, as I believe is also acknowledged by my opponent's argument, is typically based on a statute or regulation. At least certainly here, that's the basis that is asserted. But Flores failed to disclose, either pursuant to the trial court's general order or in response to a specific interrogatory, any such legal theory of duty until responding to the motion for summary judgment. Moreover... These statutes were arguments and he had put you on notice that he believed your client was liable. I don't see how Mr. Flores, in an interrogatory response, is supposed to identify statutes or regulations. He has to respond within his personal knowledge. That's a legal question. Well, putting that aside, Your Honor, the trial court's general order required that the parties disclose, for each of their claims or defenses, the facts relevant to it and the legal theories upon which it is based. The legal theory was negligence. The legal theory is negligence, yes. But it was so broadly alleged. So I would say baldly alleged in the complaint that no one could tell by reading the complaint why there would be a duty here. I mean, it's not surprising in an aviation law context that people would be pointing to statutes and regulations, the heavily regulated areas. So I guess I'm more curious to know from you why there's not, under these various Arizona regulations, a duty in this case. Well, before I answer that question, Your Honor, if I may, I wanted to point out that the trial court excluded those theories of duty. And whether the trial court was correct or not is an issue of abuse of discretion. And there's been no argument that I can see. But the trial court also went on to address them on the merits. And so I guess I'm curious what your answer is in response. Thank you. My answer is that those regulations and statutes simply do not apply. With regard to ARS 288273, which is talking about a plane under a pilot's control, here we have a pilot standing outside of the airplane requesting that the plane be opened  if in Ramsey starting the engine of the plane. And I think that was the fact, not the flying of the plane. But the starting of the engine is not directing the aircraft or directing or controlling an aircraft in the normal sense than merely requesting that a door be opened is not controlling an aircraft either. And it's just a common sense. I mean, don't we expect in this context that the pilot is in control of the airplane? I mean, the person who has the leadership position, if you will, around a plane or in a plane is the pilot. Well, here we have a pilot that's not even in his airplane yet. And it's not as though he's controlling the plane by taxiing, by taking off, by flying. He is outside the plane seeking access to the interior of the plane. I don't think that the intent of the legislature was to cover a situation such as this, where the pilot is outside the plane. He's not in control of the plane. If anyone is in control, it is Mr. Flores, whose duty it is, as Judge Merguia recognized, to attend to the plane while it's on the ramp. It is his company, his employer that hooked up the plane to the air conditioning, pressurized the plane, and it's his duty to open up the plane. And I mean, in this logic, could the pilot have instructed Mr. Flores to do any other number of highly dangerous things so long as the pilot was outside the plane? And have no liability for that? Well, you know, the Arizona law is such that unless there's a duty, it doesn't matter how careless or reckless the actions or directions of the defendant might be. So the answer to Judge Bress's question is? I can't imagine, you know, what you are imagining as to what other dangerous activities he might be directing. But again, the person who ought to know that to open the door safely might require taking some other steps, such as depressurizing the airplane. That's knowledge that is held by Mr. Flores. Well, that may be true. But here we're at a very threshold question, which is, did the pilot, as a legal matter, have a duty to Mr. Flores to avoid putting him in an unreasonable position of harm? It may be that Mr. Flores should have taken better precautions himself. That may mean he's ultimately not able to prevail in the case, or it may affect his damages. But here we're just asking, as a legal matter, did the pilot have a duty? And given the nature of the relationship at an airport by many people vis-a-vis the pilot, one might think the answer to that question would be yes. Well, and I respectfully disagree, Your Honor. Now, you know, Mr. Flores is not the employee or the agent of Mr. Flygear. They have separate employers. And if Mr. Flygear asked Mr. Flores to get on the nose of the plane and clean the windshield, and Mr. Flores fell, would that suggest that there was a duty in the first place? I mean, it seems absurd to me that we impose a duty upon Mr. Flygear for merely requesting access to the airplane that is really more under the control of Piedmont at that point than it is SkyWest and Mr. Flygear. At what point would you say that the pilot has control? When he starts the engine or some part prior to that? Where do you draw the line? I think that the intent of the statute in contemplating damage to a person caused by aircraft directed by a pilot or under the pilot's control is where the pilot is sitting in the seat and is operating the plane. A pilot's not operating a plane by standing outside trying to get inside the plane and asking that the door be opened. But why is he not directing it? He's directing the plane. Well, again, under Ramsey, if starting an engine isn't directing the plane in the normal sense, then asking that the door be opened certainly isn't. And the words of the statute do not include directing. They talk about a damage caused by aircraft directed by the pilot or under the pilot's control. Mr. Flygear isn't directing Mr. Flores in the operation of the plane. What is contemplated by these regs and statutes are pilots doing pilot activities, which are flying airplanes, starting engines, taxiing, taking off, flying, landing, et cetera. A hypothetical occurred to me, what if with regard to this federal regulation, the interpretation of which, the definition of which under the FAA is to impart some physical movement to an aircraft. It's analogous to asking that the door be opened. What if a passenger inside the plane asked that a flight attendant close an overhead door or open an overhead compartment and get something out? And in doing so, caused injury to that passenger. Would that flight attendant then be someone who is operating the airplane by way of imparting movement to it? That doesn't make any sense. And I think that is analogous to the situation here with the pilot standing outside saying, we need to get inside so that we can take off on time. Can you open the airplane? Is this a question that should be certified to the Arizona Supreme Court? Well, that's certainly an option and one I had not thought of until your question. What is the interpretation of the statute? What is the meaning of the intent of the statute? I think that this panel is certainly capable of interpreting the statute. But if it prefers to certify the question, then I'll be happy to argue to my Supreme Court. So in general here, in answer to your questions, Your Honor, what has taken place here is not the operation of an aircraft.  And I'm going to return to finish my argument that the standard of review applicable to the exclusion of these new theories of duty is abuse of discretion. And there is no place in the opening brief or the reply brief where abuse of discretion is argued. And I would submit to you that it has been waived. Beyond that, the impression I get in reading the Flores' briefs and in listening to the oral argument is that there's a real commingling and a confusion of special relationship and public policy. But the two are very separate bases for duty. And that must be kept in mind. The Gibson case tells us that very clearly. And gives us the framework for analyzing duty. Ramsey is a case that preceded Gibson. It doesn't really help here. Because at the time Ramsey was decided, foreseeability was the test. Can I ask you, sir, what if the pilot wanted to open the door and Mr. Flores hadn't been around and had asked a passenger to assist him with opening the door and the same thing had happened? Do you think the pilot would have had a duty to the passenger in that situation to avoid putting him in an unreasonable position of harm? Well, at least then the passenger, in this very unlikely hypothetical, is someone who is a passenger of the carrier. And there's a special relationship there, I believe. There's no special relationship between the pilot and the ramp agent. So one could better argue a duty to the passenger. The passenger is more than a bystander. The passenger is a passenger. I also wanted to comment that although restatement of tort section 315 has been repeatedly referred to, it simply doesn't apply. Because that's a section dealing with the duty to control the conduct of a third person to prevent harm to another. And we don't have that situation here of three people being involved. We don't have the pilot having any duty to control some third person so as to avoid that third person causing harm to Mr. Flores. 315 simply does not apply. So to finish where I began, there's simply no special relationship here. And the public policy bases for duty were waived by not asserting them as required by the court in a timely fashion. By the time the motion for summary judgment was filed, the duties, the bases for the duty had not been identified. And the time for discovery had already closed. So there was no ability on the part of SkyWest to explore, to discover, and to argue. You really wouldn't need to discover. I mean, Gibson tells us that duty is to be defined as a matter of law before you get the case specific facts. So you can tell me you didn't have a chance to discover, but I don't know what discovery could possibly have made any difference. It may not have, Your Honor, but yes, the fact-intensive question is whether there's a breach of a duty. The existence of a duty is a legal question. But there was no, but the raising of these statutory or regulatory bases presents new questions that were never before the court, never before SkyWest at the time it moved for summary judgment. I think my time is about to expire, but I would welcome any further questions. Thank you. Thank you, Your Honors. Mr. Desmond. Sorry, I apologize for that. I'd like to start, Your Honors, by talking about the trial court's handling of our citation to the statutory authority and saying that we did not adequately disclose those. The Supreme Court's opinion in Johnson v. City of Shelby is directly on point to this what that case says is that in the Fifth Circuit, the Fifth Circuit had a practice of dismissing claims that did not directly cite to 1942 U.S. v. 1983 under the basis of Iqbal and Twombly. The U.S. Supreme Court said that Iqbal and Twombly simply require people to provide the factual basis for the claim, not the actual legal theory by way of statutory citation. And that's exactly what this court required us to do. One of the panel members noted, I believe it was you, Judge Clifton, noted that the legal theory in this case was negligent. That theory was always disclosed. I think we have this part of your argument. Can you respond to your opposing counsel's argument that there may be a duty as between a pilot and passenger, but not a pilot and another employee of the airport or at least a gate agent like Mr. Flores? Well, so Your Honor, I think that that depends on whether or not you're going under the special relationship prong or the public policy prong. I'm going to try to be very quick with this because time is limited. But under the public policy prong, that 28-8273 just says damage to a person or property. It doesn't make any differentiation between who the person is or what their relationship to the aircraft is. Now, there was some discussion of Ramsey's handling of that statute. And I think it's important to read what Ramsey actually says. What Ramsey says is, and they say this in footnote three, the damage to property in this case was not, quote, caused by aircraft directed by the pilot. And that's the court quoting the statute in the normal sense of those words. Even if applicable, this statute merely restates preexisting tort principles and does not change the fundamental nature of the action. So in that case, you weren't dealing with an instance where an aircraft actually caused damage to anything. The aircraft damaged itself. And really, the pilot damaged the aircraft through his action. The statute is geared toward the aircraft causing injury. And in this case, that's exactly what occurred. A portion of the aircraft caused injury to my client. Now, your honor, you had asked the question, Judge Bratz, about what if Mr. Flygear had instructed my client to do something else dangerous. And brother counsel came up with the example of asking my client to go on to the nose of the plane to clean the window. Well, that's a very different situation. Because in that instance, both people would be on equal footing to understand the danger that was posed. That is not what occurred viewing the record in the light most favorable to the non-moving party here. What occurred is that Mr. Flygear solely was aware of the dangers involved with opening the aircraft door when he asked my client to do so. And so I think that when the court considers that factor, particularly in light of the case of pilot exercising control of an aircraft, and that control of the aircraft in turn causing damage to a person or property. All right, thank you very much. I appreciate your arguments here today. In the case of Mauricio Flores versus SkyWest is now submitted. Thank you, Mr. Desmond, Mr. Worken. Appreciate your presentations. Thank you, your honor. That concludes our docket for today. And so we'll be adjourned. Thank you. All rise.
judges: CLIFTON, MURGUIA, BRESS